1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6                                      * * *

7    BENJAMIN ADAMS,                              Case No. 2:16-cv-00003-PAL

8                              Plaintiff,

9         v.                                                **ORDER**

10   NANCY A. BERRYHILL, Acting                    (Mot. to Remand – ECF No. 18)
     Commissioner of Social Security,            (Cross-Mot. to Affirm – ECF No. 25)

11

12                           Defendant.

13         This matter involves Plaintiff Benjamin Adam's appeal and request for judicial review of

14   the Acting Commissioner of Social Security, Defendant Nancy A. Berryhill's final decision

15   denying his claims for disability insurance benefits under Title II of the Social Security Act (the

16   "Act"), 42 U.S.C. §§ 401–33, and supplemental security income under Title XVI of the Act, 42

17   U.S.C. §§ 1381–83.[1]  This case is referred to the undersigned magistrate judge for a determination

18   and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of

19   Civil Procedure.  *See* Reference Order (ECF No. 28).

20                                   **BACKGROUND**

21         In December 2012, Mr. Adams protectively filed a Title II application for a period of

22   disability and a Title XVI application for supplemental security income.  AR 16, 145–47.[2]  His

23   work history included jobs as a retail manager and tax preparer.  AR 179.  In his applications,

24
     _____

25   [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to the Federal Rules of
     Civil Procedure and the Social Security Act, the court therefore substitutes Nancy A. Berryhill for Carolyn
26   W. Colvin as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d) (allowing automatic substitution of a
     successor to a public officer who is a party to an action but ceases to hold office while the action is pending);
27   42 U.S.C. § 405(g).

28   [2] "AR" refers to the Administrative Record (ECF No. 17-1), a certified copy of which was filed under seal
     on the court's docket and delivered to the undersigned upon the Commissioner's filing of her Answer.

                                           1

1  Adams claimed he was unable to work because of back problems.  AR 53.  The Social Security

2  Administration denied his applications initially and on reconsideration due to insufficient medical

3  evidence and his failure to cooperate by submitting questionnaire forms as requested.  AR 53–78.

4      An administrative law judge ("ALJ") held a hearing on May 2, 2014, where Mr. Adams

5  appeared with counsel.  AR 30–50.  Adams testified his back pain was the result of a degenerative,

6  hereditary condition that caused tingling, numbness, and neuropathy in his legs and feet.  AR 42–

7  43.  In a July 2014 decision, the ALJ found that Adams was not disabled.  AR 16–25.

8      Mr. Adams requested review of the ALJ's decision by the Appeals Council, but the ALJ's

9  decision became final when the Appeals Council denied review.  AR 1–6.  In January 2016, Adams

10  filed a complaint in federal court, seeking judicial review of the adverse decision pursuant to 42

11  U.S.C. § 405(g).  The Commissioner filed an Answer (ECF No. 14) on April 18, 2016.

12      Mr. Adams has filed a Motion for Reversal and/or Remand (ECF No. 18), and the

13  Commissioner filed a Cross-Motion to Affirm and Response (ECF No. 25).  Adams did not file a

14  reply and the deadline to do so has expired.  The court has reviewed the record and considered the

15  parties' motions.  For the reasons explained, the court denies Adams' Motion and grants the

16  Commissioner's Cross-Motion.  The ALJ's finding that Adams has not been under a disability as

17  defined in the Social Security Act from June 1, 2010 through the date of the July 8, 2014 decision

18  is supported by substantial evidence.

19                              **DISCUSSION**

20  **I.    APPLICABLE LAW**

21      **A.  Judicial Review of Disability Determinations**

22      Federal district courts review administrative decisions in social security benefits cases

23  under 42 U.S.C. § 405(g).  However, judicial "review of social security determinations is limited."

24  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  After an ALJ has

25  held a hearing and the decision is final, § 405(g) allows a disability claimant to seek judicial review

26  of an adverse decision by filing a lawsuit in a federal district court within the district where the

27  claimant lives.  The statute authorizes the court to enter "a judgment affirming, modifying, or

28  / / /

2

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The ALJ's findings of fact are conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g). The court may reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). To determine whether the ALJ's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75 (quotation omitted).

**B. Disability Evaluation Process**

A five-step sequential evaluation process is used to determine whether a claimant is disabled and eligible for benefits:

> First, the agency must consider the claimant's current work activity. Second, the agency must consider the medical severity of the claimant's impairments. Third, the agency must determine whether the severity of those impairments is sufficient to meet, or medically equal, the criteria of an impairment listed in three of the Social Security Act's implementing regulations, published at 20 C.F.R. §§ 404.1520(d), 404.1525–26. Fourth, the agency determines whether the claimant can perform past relevant work in light of the claimant's residual functional capacity. Fifth, the agency assesses whether the claimant can make an adjustment to other work that exists in significant numbers in the national economy, based on the claimant's residual functional capacity.

*Shaibi*, 883 F.3d at 1106 (citing 20 C.F.R. § 404.1520(a)). " 'The claimant carries the initial burden of proving a disability in steps one through four'." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to continue his or her

past work with specific medical evidence, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Shaibi*, 883 F.3d at 1106.

## II. THE ALJ'S DECISION

An ALJ is required to follow the five-step process to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an ALJ makes a finding of disability or non-disability at any step, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step process and issued an unfavorable decision in July 2014. AR 16–25 (the "Decision"). Adams does not challenge the ALJ's findings at steps one through three, but asserts legal error at step four.[3] At step one, the ALJ found that Adams had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. AR 18. At step two, the ALJ determined Adams had the following severe impairments: (i) degenerative changes of the cervical spine and lumbar spine; (ii) status post laminectomy of the lumbar spine; (iii) status post bilateral rotator cuff repair; (iv) status post repair of the right knee meniscus; and (v) obesity. AR 18–20. At step three, the ALJ found that Adams did not have an impairment that satisfied the requirements of any impairment described in the Listings. AR 20–21.

### C. Step Four – RFC Determination

The fourth step requires an ALJ to determine whether a claimant has the RFC to perform his or her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). To the extent

---

[3] The parties stipulate that the ALJ fairly and accurately summarized the evidence and testimony of record in the Decision, except as specifically addressed in their arguments.

that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

> After considering the entire record, the ALJ concluded that Adams had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he could stand or walk up to 4 hours in an 8 hour day; he could stand, sit, or walk up to 45 minutes at a time before he would need to alternate position; he could operate foot controls up to 1/3 of the day; he would be precluded from pushing, pulling, or use of ladders, ropes or scaffolds; he could sustain postural changes up to 1/3 of the day; he could not work around unprotected heights, or temperature extremes; he could tolerate occasional exposure to vibration, humidity, wetness, dust, fumes, or gases; he could work at an office with a moderate noise level; and he was precluded from work requiring walking on rough or uneven surfaces.

AR 20–21. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence." AR 21. He also considered opinion evidence. *Id*. Although the ALJ found that Adams' medically determinable impairments could reasonably be expected to cause his alleged symptoms, he determined that Adams' statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. AR 23. The ALJ found that Adams' pain allegations were not supported by the objective findings of the medical record and were inconsistent with the medical opinion evidence. AR 22–24.

### 1. Mr. Adams' Medical Records

The ALJ provided a comprehensive summary of Adams' medical records at steps two and three of the Decision. AR 18–21. In December 2010, Adams presented to Desert Family Medicine complaining of low back pain. AR 18 (citing AR 273). He weighed 228 lbs. *Id*. He estimated his pain level at 4/10. *Id*. His physical exam was unremarkable and neurology was normal. *Id*. He returned four months later in March 2011, complaining of radiating back pain. AR 19 (citing AR 270). He weighed 232 lbs. *Id*. On exam, his reflexes were reduced and he had spasm. *Id*. An MRI of his lumbar spine confirmed borderline central canal stenosis at L5-Sl, severe at L4-L5,

and mild at L3-L4. AR 19 (citing AR 322). At L5-Sl, there was grade 1 retrolisthesis, broad-based disc bulge. *Id.*

In May 2011, Adams presented to the Spine and Brain Institute. AR 19 (citing 282–83). He complained of increased low-back pain, radiating down his left side and legs, and numbness in his left buttock. *Id.* However, he denied coordination problems in his legs and arms. *Id.* On exam, his weight was 230 lbs., his motor exam was normal, but he had weakness in the L5 distribution on the left. *Id.* The following month, Adams underwent a bilateral decompressive laminectomy. AR 19 (citing AR 281). He returned to the Spine and Brain Institute in July 2011 for a post-op visit and reported a "significant decrease in pain." AR 19 (citing AR 287). Treatment notes from a September 2011 follow-up state that Adams was "making progress," though he reported a fair amount of myofascial pain in the lumbar region. AR 19 (citing AR 289–91).

In mid-December 2011, Adams returned to the Spine and Brain Institute reporting a sudden onset of left leg pain. AR 20 (citing AR 292–94). The treatment notes states that all his symptoms had resolved three months after surgery and he was doing well, but the pain returned in early December without any trauma or injury. *Id.* He sought care at the emergency room, where he was given a Toradol shot but it did not help. *Id.* He was prescribed Percocet. *Id.*

Adams returned to the Spine and Brain Institute nearly 11 months later in November 2012. AR 20 (citing AR 295–96). He reported that the pain in his back had not improved since the 2011 laminectomy. *Id.* On exam, his gait, station, sensation, and reflexes were all normal. *Id.* A new MRI of Adams' lumbar spine confirmed degeneration at multiple levels, including scar tissue enveloping the left S1 nerve root at the L5-S1 level. AR 20 (citing AR 279). At L4-L5, there was bilateral lateral recess stenosis, but no appreciable foraminal stenosis, status-post posterior decompression at this level. *Id.* The mild stenosis remained at L3-L4 with no change. *Id.*

Adams returned to the Spine and Brain Institute over 14 months later, in January 2014, alleging worsening low back and leg pain. AR 20 (citing AR 389–91). However, the treatment notes indicate that on exam he denied weakness in the extremities or back pain. *Id.* His motor strength and sensation were also normal. *Id.*

A February 8, 2014 MRI confirmed disc bulging at L3-4, L4-L5, and L5-S1.  AR 20 (citing AR 401–02).  Flattening of the ventral thecal sac with the bilateral laminectomy changes were visible at L4-L5 and L5-S1.  *Id.*  There was moderately severe facet arthropathy at L4-L5.  *Id.*

Mr. Adams underwent elective revision laminectomy and posterior interbody fusion at St. Rose Dominican Hospital on April 1, 2014.  AR 20 (citing AR 411).  The ALJ described the treatment notes regarding Adams' postoperative course as "essentially unremarkable."  AR 20.

## 2. Consultative Exam with Dr. Cestkowski

In addition to medical records, the ALJ relied on the results of Adams' February 28, 2014 comprehensive evaluation with Richard Cestkowski, D.O.  AR 24 (citing AR 369–84 (Consultative Examination Report)).  During the exam, Adams complained of chronic low back pain, radiating into his lower extremities, and rated his pain level as 7-10/10.  *Id.*  He told Dr. Cestkowski he could sit for about one hour, stand for about 20 minutes, and walk for about 30 minutes.  *Id.*  He avoided lifting.  *Id.*  He sometimes used a rolling walker for ambulation.  *Id.*  His medication consisted of Robaxin, Neurontin, and Hydrocodone.  *Id.*

On exam, Mr. Adams' weight was 198 lbs.  *Id.*  There was mild tenderness and spasm on palpitation of the lumbar spine.  *Id.*  Examination of the cervical spine was normal.  *Id.*  Neurology confirmed slight weakness in the lower left extremity.  *Id.*  There was no evidence of chronic pain syndrome in either lower extremity.  *Id.*  Dr. Cestkowski noted that Adams ambulated to the exam room without use of an assistive device.  AR 24 (citing AR 372–74).  Based on these findings, Dr. Cestkowski limited Adams to less than a full range of light exertion.  AR 24 (citing AR 375–80).

Although Dr. Cestkowski was not a treating source, the ALJ noted that the doctor's findings and opinion were based on a detailed clinical orthopedic evaluation and review of objective imaging and surgical reports from Adams' treating sources.  AR 24.  The ALJ found that Dr. Cestkowski's "assessment was consistent with the objective evidence both from the clinical exam as well as from the treating source records."  *Id.*  In addition, there was "no offer of proof of additional objective or other credible medical evidence supporting a more restrictive functional assessment" as of the date of the Decision.  *Id.*  For these reasons, the ALJ gave the functional capacity assessment by Dr. Cestkowski great weight.  *Id.*

### 3. Mr. Adams' Credibility

The Decision provides details of a disability report Adams submitted in April 2013 in which he complained of chronic throbbing pain in his lower back, knees, and shoulders. AR 22 (citing AR 209–12 (stating that Adams' first disability report was completed in December 2012 and describing changes)). Adams reported that his back was stiff, and he had more difficulty moving around. *Id.* It took him two hours to get out of bed. *Id.* He did less walking, and overall, did less physical activity. *Id.* He needed to change positions all the time because he could not get comfortable. *Id.* He was fatigued often because the pain prevented him from sleeping well. *Id.* He complained of tingling in both feet, poor concentration, poor focus, and memory problems. *Id.* Although he reported these changes to his condition, the ALJ noted that Adams' report admitted he had not received medical treatment. *Id.*

At the May 2, 2014 hearing, Mr. Adams testified that his weight was 195 lbs. AR 22, 30–50 (Hearing Transcript). He had not worked for approximately four years. *Id.* He previously earned money by donating plasma, but stopped when he had back surgery. *Id.* He testified he had been trying to find work but no one was interested in hiring someone with a back problem. AR 23. He alleged that in a standard 20-day work month, he would be able to work 8–10 days at most. *Id.*

Adams alleged he had a hereditary condition with a narrow spinal column and he would eventually end up in a wheelchair. *Id.* He testified that his medication was not very effective, and the pain and medication "took away" from his mental sharpness. *Id.* It was hard for him to focus on things he needed to do. *Id.* If he sat for too long, he felt pressure and tingling in his thighs. *Id.* He slept on the floor at his mother's house and he did not sleep well because of pain. *Id.*

Adams testified that his first back surgery did not help. AR 23. He had a second surgery about four weeks prior to the hearing and did not yet know whether it was helpful. *Id.* He claimed he used a walker if he had to go any distance. *Id.* He testified he had fallen many times and had days when he could not be on his feet and he would crawl to the bathroom. *Id.* He drove to the library and read books to pass the time and was able to manage his personal care. *Id.*

The Decision further states that Adams exercised and lost weight to help his back. *Id.* He used the sauna and he rode a bike, although he was unable to ride at the time of the hearing because

of the recent surgery.  *Id.*  Over the preceding four years, he typically rode his bike once a week for a few miles.  *Id.*

The ALJ found that objective evidence confirmed multiple musculoskeletal impairments that reasonably would result in some degree of physical pain.  AR 23.  However, Mr. Adams had complained of chronic pain registering between 7–10/10.  The ALJ determined the alleged level of pain was not consistent with the treating source clinical evidence because, during exams, Adams repeatedly was "noted to deny pain, to have nearly full range of motion, and to have only mild loss of sensation."  *Id.*  The ALJ therefore concluded that Adams' allegations were inconsistent with the treating source evidence and he was less than entirely credible.  AR 23–24.

The ALJ also noted that Adams alleged a loss of mental focus as a result of his pain and prescribed medication.  AR 24.  However, no such effects were described in the treating source records or by Dr. Cestkowski.  *Id.*  Thus, the ALJ found that a supportable restriction in Adams' ability to focus, remember, or concentrate could not be assessed when there was no medical evidence to support his self-reports.  *Id.*  This was another reason the ALJ found Adams was less than entirely credible.  *Id.*

### D.  Step Four – Ability to Perform PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his or her PRW.  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy.  20 C.F.R. § 404.1560(b).  In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.  If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

The Department of Labor publishes the Dictionary of Occupational Titles (DOT), which provides "detailed physical requirements for a variety of jobs."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007)).  The ALJ and/or a vocational expert utilizes the DOT in determining whether

a claimant, given his RFC, can perform his PRW. *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

At step four in the Decision, the ALJ concluded that Mr. Adams was capable of performing his PRW as a tax preparer or office manager. AR 24–25. His PRW as a tax preparer is performed at a sedentary level of exertion, semi-skilled work with a specific vocational profile ("SVP") of 4, and his PRW as an officer manager is performed at a light level of exertion, semi-skilled work with an SVP of 4. AR 25.[4] After comparing Adams' RFC with the physical and mental demands of his PRW, the ALJ found that Adams was able to perform his PRW as it is generally performed. *Id.* As a result, the ALJ found that Adams was not disabled.

## ANALYSIS AND FINDINGS

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit reversible error. The sole issue on appeal is whether the ALJ committed reversible error in failing to properly assess Adams' credibility. Adams seeks reversal and remand of the Decision arguing the ALJ failed to articulate adequate reasons to determine Adams was not credible. Pl.'s Mot. (ECF No. 18). The Commissioner seeks affirmance of the Decision asserting that the ALJ properly assessed Adams' credibility and determined that Adams' is not disabled. Cross-Mot. & Resp. (ECF No. 25). Because the ALJ's adverse credibility determination was supported by specific, clear, and convincing reasons, the court must uphold it.

## I.  LEGAL STANDARDS

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Leon v. Berryhill*, 880

---

[4]  The DOT describes Adams' PRW as a tax preparer at No. 219.362-070 and office manager at No. 219.362-010. AR 25.

F.3d 1041, 1046 (9th Cir. 2017). In this first step, a claimant need only show that his or her impairment could reasonably have caused *some degree* of the symptom alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms or produce objective medical evidence of the pain, fatigue, or the severity thereof. *Id.*

If a claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of his symptoms by offering "'specific, clear and convincing reasons'" for doing so. *Leon*, 880 F.3d at 1046 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014)).[5] As the Ninth Circuit has recognized, this is not an easy requirement to meet because the "clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). However, "the ALJ is not required to believe every allegation of disabling pain," otherwise disability benefits "would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Molina*, 674 F.3d at 1112 (quoting *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). For example, an ALJ may consider factors such as: (i) inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; (ii) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (iii) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (iv) the observations of treating and examining physicians and other third parties regarding the

---

[5] The Commissioner acknowledges that the "clear and convincing" standard is a part of Ninth Circuit case law, but maintains that the standard only applies in some circumstances and it is inconsistent with the deferential "substantial evidence" standard prescribed by Congress in 42 U.S.C. § 405(g). *See* Cross-Mot. & Resp. (ECF No. 25) at 5–6, n.3. The Ninth Circuit has specifically and repeatedly rejected this position. *See, e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (noting that the Commissioner disputed the "clear and convincing" standard and finding that *Burrell* foreclosed the Commissioner's argument); *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also Trevizo*, 871 F.3d at 678–79 (stating the clear and convincing standard).

claimant's symptoms; (v) functional restrictions caused by the symptoms; and (vi) the claimant's daily activities. *Molina*, 674 F.3d at 1112; *Rounds*, 807 F.3d at 1006; *Smolen*, 80 F.3d at 1284.

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain'." *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell*, 947 F.2d at 345–46). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning" that will allow a reviewing court "to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1103).

In this case, the ALJ's credibility findings provide specific, clear and convincing reasons for rejecting Adams' testimony about the severity of his symptoms. The Decision specifically points out inconsistencies between his testimony, the medical records, and his function reports to support the adverse credibility finding.

**A. The ALJ's Evaluation of Adams' Daily Activities is Free of Legal Error**

Mr. Adams claims the ALJ provided no meaningful analysis of his daily activities and made only a passing reference that he could discount a claimant's subjective complaints if they are inconsistent with daily activities. Mot at 8 (citing AR 23). The Commissioner argues the ALJ correctly found that Adams' daily activities were at odds with Adams' claims of debilitating symptoms, and the discrepancies explain why the ALJ determined Adams' reported symptoms were not entirely credible. Cross-Mot. & Resp. at 6–8. The Commissioner maintains the ALJ properly summarized Adams' daily activities, including activities that were inconsistent with his purported symptoms like driving to the library to read books and riding a bicycle.

In considering a claimant's credibility, an ALJ may consider whether the claimant reports participation in everyday activities that are inconsistent with his alleged symptoms. *Molina*, 674 F.3d at 1112–13 (citation omitted); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Even

when those activities suggest some difficulty in functioning, "they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ adequately described Mr. Adams' relatively active lifestyle from the alleged onset date of disability through the July 2014 Decision. The ALJ made specific findings about which of Adams' daily activities undermined his allegations of disability. For example, the ALJ found that Adams had no physical problems with personal care, earned money by donating plasma, and drove himself to the library and read books to pass the time. AR 23. Adams also exercised and lost a considerable amount of weight to help his back. *Id.* The ALJ pointed out that, over the preceding four years, Adams typically rode his bike once a week for a few miles. *Id.* Adams argues that the ALJ's analysis of Adams' daily activities is lacking. The court disagrees. An ALJ is not required to specifically recite "magic words" or an "incantation" to support his analysis. An ALJ's decision is sufficiently supported when the ALJ summarizes facts and conflicting clinical evidence in a detailed and thorough fashion, stating his interpretation and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that case law does not require an ALJ to expressly state: I reject __ because of __ reason). The relevant and clear inference from the pages summarizing Adams' daily activities in detail is that such activities were inconsistent with Adams' allegations of disabling functional limitations and the medical evidence. This is sufficient under Ninth Circuit case law.

Mr. Adams' testimony and medical records further support the ALJ's adverse credibility finding regarding his daily activities. Adams testified that he regularly drove himself to doctor's appointments, walked to the library, cooked his own meals, and exercised with weights and a recumbent exercise bike. AR 30–50. In addition, Adams' treatment notes from the hospital after his second back surgery indicate that he was "fairly functional" and "independent in his activities of daily living." AR 419. The ALJ was permitted to make an adverse credibility finding based on Adams' daily activities as one of multiple factors considered. *See, e.g.*, *Bray*, 554 F.3d at 1227 (activities supported adverse credibility finding where claimant was a caregiver, cooked, walked, cleaned, and drove).

**B. The ALJ Did Not Commit Legal Error in Finding that the Medical Record Contradicted Adams' Allegations of Disability**

Mr. Adams asserts the ALJ failed to appreciate the degenerative nature of Adams' back pain and erroneously discounted his complaints as inconsistent with treating source clinical evidence. Mot. at 9–12 (citing AR 23–24). Adams further claims the ALJ was not entitled to rely on Dr. Cestkowski's opinion because the consultative examiner did not review the February 2014 MRI that confirmed Adams' need to undergo the April 2014 surgery. Adams therefore argues that Cestkowski's opinion does not present a complete picture of Adams' back impairment and subjective symptomology, and the ALJ's erroneous reliance on Dr. Cestkowski's opinion was not harmless.

The Commissioner asserts the ALJ correctly found that objective evidence did not support Adams' claims of disabling symptoms because the clinical findings were inconsistent with Adams' allegations and did not include any medical opinions supporting his assertions. The Commissioner points out that the Decision cites multiple treatment notes describing Adams' back pain as mild or improved and indicating Adams had normal strength, tone, and reflexes, despite any pain. AR 18–20. In addition, the Commissioner argues that Dr. Cestkowski's opinion contradicted Adams' pain allegations and showed he functioned better than claimed. AR 24. The Commissioner further asserts Adams' claims of disability were undermined by his failure to seek medical treatment. AR 16, 22. For these reasons, the Decision is supported by substantial evidence and free from legal error.

The court finds no legal error in the ALJ's evaluation of the medical evidence of record in assessing Adams' credibility. To the extent there were conflicting opinions and testimony regarding the degree of Adams' functional limitations, it was the ALJ's duty to resolve those conflicts. "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency'." *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Thus, courts must "leave it to the ALJ to determine

credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (citing 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75 (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

Here, the ALJ's credibility findings are a rational interpretation of the record as a whole. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Mr. Adams had complained of chronic pain registering between 7–10/10. AR 23. However, multiple treatment notes describe unremarkable physical exams, normal neurology, motor strength, and sensation, and Adams denied weakness in the extremities or back pain. AR 18–20, 23–24 (citing AR 273, 282–83, 389–91); *see also* AR 287–88, 364–67, 415–16. The ALJ thus determined the alleged level of pain was not consistent with the treating source clinical evidence. AR 23–24. Adams also alleged a lack of mental focus and chronic fatigue as a result of his pain and prescribed medication. AR 24; *see also* AR 46, 210, 257. However, the ALJ found that no such effects were described in the treating records or by the consulting physician. AR 24; *see also* AR 289–94, 297–99, 386–94 (reporting no disorientation, inability to concentrate, or excessive fatigue). Adams testified at the administrative hearing that his medication did not cause "a mental fog or anything". (Q. "Did you have any side effects of the medication … a mental fog or anything? A. No, no."). AR 43-44. The ALJ therefore found no medical evidence to support Adams' self-reports of decreased ability to focus, remember, or concentrate. AR 24. These were among the reasons the ALJ found Adams was less than entirely credible. AR 23–24.[6] The record as a whole supports

---

[6] A footnote in Adams' motion to reverse or remand points out that effective March 28, 2016, Social Security Ruling 96-7p was rescinded and Social Security Ruling 16-3p was implemented in its place. *See* Motion, p. 6, footnote 1. Plaintiff states that Social Security Ruling 16-3p clarifies agency policy in assessing a claimant's subjective symptoms. The Commissioner's cross-motion to affirm argues the court should apply Social Security Ruling 96-7p because it was the regulation in effect at the time the ALJ made its decision, and the regulation was not made retroactive. However, plaintiff's footnote states "[f]or the purposes of this case, there is no functional difference between the two Rulings other than the removal of the term 'credibility'". The court therefore need not decide which regulation applies.

the ALJ's findings.

The ALJ also found that Dr. Cestkowski's objective examination undermined Adams' allegations of disabling pain and limitations. AR 24. Dr. Cestkowski, conducted a consultative examination, and is not one of plaintiff's treating physicians. However, Dr. Cestkowski is the only medical source who provided a medical source opinion about Adams' ability to do work-related activities. Cestkowski's exam of Adams revealed only a mild tenderness and spasm on palpitation of the lumbar spine and neurology confirmed slight weakness in the lower left extremity. AR 373. There was no evidence of chronic pain syndrome in either lower extremity. *Id.* Adams' gait and station were unremarkable. AR 374. These limited exam findings prompted Dr. Cestkowski to opine that Adams was capable of less than a full range of light exertion. AR 24 (citing AR 375–80). Adams argues the ALJ erroneously relied on Cestkowski's opinion because his exam of Adams was incomplete since the doctor did not review the February 2014 MRI resulting in the recommendation for a second surgery. The ALJ expressly found there was "no offer of proof or additional objective or other credible medical evidence supporting a more restrictive functional assessment" as of the date of the Decision. *Id.* Adams testified at the administrative hearing that it was "too early to tell" whether the second surgery helped and that his doctor said the surgery was successful. AR 36. No other evidence was presented to the ALJ about the second surgery.

No physician, treating or otherwise, opined that Adams was totally disabled or unable to work. An April 2, 2014 medical consult conducted at the hospital by Dr. Raroque at the request of Adam's surgeon, Dr. Duke, following Adams' revision laminectomy states "[a]t baseline, he is fairly functional, independent in his activities of daily living." AR 418-420. *See Matthews v. Shalala*, 10 F.3d 678, 680–81 (9th Cir. 1993) (in upholding the Commissioner's non-disability decision, the Ninth Circuit emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested claimant was disabled). The ALJ found that Dr. Cestkowski's opinion was "consistent with the objective evidence both from the clinical exam as well as from the treating source records." AR 24.

As the ALJ found, Adams suffers from severe impairments of the cervical and lumbar spine. However, reviewing the record as a whole, Adams did not meet his burden of establishing he was disabled as defined by the Social Security Act from June 1, 2010 through the date of the ALJ's July 8, 2014 decision. The ALJ did not err by giving Cestkowski's opinion great weight.It was the ALJ's duty to resolve conflicts between Adams' testimony, the treatment notes and records, and Dr. Cestkowski's opinion. If the record will support more than one rational interpretation, the court must uphold the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. The ALJ's findings are amply supported by the record and inferences reasonably drawn from the record.

The ALJ's Decision comprehensively reviewed and summarized Adams' medical records. The ALJ found that Adams' allegations of disabling pain and limitations were contradicted by minimal objective findings during physical examinations. The ALJ's adverse credibility determination was supported by specific, clear, and convincing reasons, and the Decision is supported by substantial evidence. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court finds that the ALJ did not err in his assessment that Adams could perform light work with certain restrictions, and his past relevant work as a tax preparer and office manager. The ALJ's determination that he was not disabled must be upheld because it is supported by substantial evidence.

## CONCLUSION

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion. Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

Accordingly,

**IT IS ORDERED :**

1.  The Clerk of Court shall SUBSTITUTE Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

2.  Plaintiff Benjamin Adam's Motion for Reversal and/or Remand (ECF No. 18) is **DENIED**.

3.  The Commissioner's Cross-Motion to Affirm (ECF No. 25) is **GRANTED**.

4.  The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 16th day of January, 2019.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE